Joseph F. Hawkins, J.
Petitioners, operators of a bar and grill, located in the Village of Port Chester, New York, who are also owners of the real property containing the licensed premises, bring this proceeding pursuant to article 78 of the CPLR: (a) to prohibit the respondents “from illegally proceeding against petitioners under the State 'Standard Building Code For Places Of Public Assembly ”, and (b) reviewing the action of the respondents denying petitioners a permit for a curb lowering.
Let it be noted, at the outset, that the court is not unaware of the village’s problems resulting from the proliferation of bars — “sixty or more” — and that they present an irresistible cynosure to liquor-deprived residents of Connecticut in the 18-21 years-of-age category; also, that its myriad law-enforcement difficulties have engendered considerable public and newspaper comment. The Mayor of the village, the members of the Board of Trustees and the Building Inspector, all named as respondents seem to have been endeavoring manfully to cope with the attendant grievous problems.
The petitioners allege that on June 25, 1965, the respondent Building Inspector appeared at petitioners’ bar and placed a hand-written sign upon an interior wall of the premises containing the following legend: 1 ‘ Occupancy by more than 30 persons in bar, 32 persons in dining room is dangerous and unlawful. (Signed) By Order of Building Inspector Department Louis P. Buzzeo Village of Port Chester 110 Willett Avenue ”.
The respondents justify this action by citing section 110 of the Labor Law and Industrial Code and section 36-2.2 (subd. [b] , pars. [10], [11]) of the State Standard Building Code for Places of Public Assembly (12 NYCRR 36-2.2). The latter section is made applicable to places of “public assembly” as defined in section 2 (subd. 12) of the Labor Law, which defines a “Place of public assembly” as including: “ (1) a theatre, (2) moving picture house, (3) assembly halls maintained or leased for pecuniary gain where one hundred or more persons may assemble for amusement or recreation, except (a) halls *396 owned by churches, religious organizations, grange and public associations and free libraries as defined by section two hundred fifty-three of the education law, (b) hotels having fifty or more rooms, (c) state and county fair grounds and buildings connected therewith, (d) grounds or buildings of agricultural societies or associations receiving state aid.”
It is obvious from the foregoing that the petitioners’ premises do not come within any of the three categories enumerated in the Labor Law.
Respondents now urge that the petitioners’ business is located in a “ fragile frame building ’ ’ and that there is danger of overcrowding. It strains one’s credulity to accept the respondents’ postlitem conclusion that this “fragile” structure can safely accommodate only 74 persons (as of June 10, 1965) or 62 persons (as of June 25, 1965); but that 8 or a score more patrons render it a major disaster area. If the building is so dilapidated and hazardous, concern for the public’s safety should dictate no occupancy whatever. Nor is the inordinate delay explained; petitioners have been operating the premises for the past four years.
If, in fact and truth, there is such danger, the municipality is not without remedy; it can and should enforce the applicable Building Code. If existing local legislation is inadequate to cope with the problem, the remedy similarly is quite obvious. The petitioners, furthermore, are licensed by the New York State Liquor Authority. We find it difficult to accept the argument that this State agency, known for its rigorous and meticulous regulation of the requisite physical characteristics of establishments under its jurisdiction, would license a building so fraught with danger to the public.
Of much moment is the issue of discriminatory enforcement raised by petitioners. Accepting petitioners’ census, which is not disputed, there are some 60 licensed bars in the village. Significantly, only the petitioners’ establishment has been so placarded and restricted. In the absence of any denial, we must assume this to be so. Present is a hornbook illustration of selective and discriminatory enforcement fairly akin to that condemned by the United States Supreme Court as violative of the equal protection clause of the Constitution. We are here confronted with the statute, cum enforcement, constituting such adversary proceeding as to warrant jurisdiction to review. (Poe v. Ullman, 367 U. S. 497, 506-507.) There is here, also, ‘ ‘ an arbitrary administrative pattern ’ ’ of enforcement and nonenforcement discussed by Justice Douglas in his dissent in Poe v. Ullman (supra), at page 512: nor can we condone enforce *397 ment which is dependent upon “legally unfettered whim,” to employ Justice Brennan’s phrase (supra), at page 537.
We now consider the latter portion of the petitioners’ prayer for relief; respondents’ refusal to issue a permit for a curb cut. Petitioners acquired title to the property on May 1, 1965. By communication to the Mayor and Board of Trustees, dated May 26, 1965, petitioners requested removal of a parking meter in front of their property and for a permit to cut a curb in Midland Avenue, thereby allowing petitioners to create an off-street parking area on the side of their building. The respondent Board of Trustees at a meeting held on June 21, 1965, denied the petitioners’ request.
A copy of the minutes of the meeting annexed to respondents’ return incorporates a petition signed by many residents of the area memorializing the Village Trustees to reject petitioners’ application. This appears to be the only statement of intent or finding upon which the legislative judgment was exercised. The salient points in the residents’ petition are that the neighborhood children use the “very sidewalk” as a “playground”; and that the conduct of the patrons of the petitioners’ establishment was such that their “ irresponsibility will continue during the progress of these patrons in the future from the street, across the walk and into the lot ”. The respondents are content, in rejoinder, merely and curtly to allege: “ That the Board of Trustees denied the application of the petitioners for a curb cut and removal of a meter after due and considered deliteration [sic] of all the problems involved.”
In the very next paragraph of the return, it is alleged: ‘1 That the petitioners have not shown as a matter of law that no valid ground exists for its denial.” This is not a correct statement of the burden imposed upon one seeking to set aside such a determination. If the respondents justify their refusal to issue a curb cut permit solely upon the petition of the aggrieved neighbors, thereby depriving the petitioners of a substantial property right without any affirmative findings of their own and which the petitioners are accorded an opportunity to rebut, they have yielded their responsibilities, judgment and prerogatives to the importunities of neighbors, no matter how well-intentioned, or valid or real their grievances. There is here a profound omission to observe the most basic and minimal procedural requirements of due process.
Granting a curb lowering permit is not a matter of grace; it may — and here does — confer or deny substantial property rights. While, usually, it is discretionary, nevertheless unusual circumstances may warrant judicial intervention despite the *398 existence of a local ordinance to the extent of decreeing that “the members of the common council [are] directed to issue the curb-lowering permit ”, and that “ There is no necessity for remission of the matter” to the legislative body. (Matter of Oleet v. Hildreth, 286 App. Div. 886, affd. 1 N Y 2d 798.) The matter is within the competence of this court. As was held in Matter of Adams Holding Corp. v. Spitz (17 A D 2d 853): “ For the purpose of court review, such denial is not deemed to be a legislative act; hence, a proceeding under article 78 of the Civil Practice Act is available to review the denial (see, e.g., Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20, 24; cf. Matter of Oleet v. Hildreth, 286 App. Div. 886, affd. 1 N Y 2d 798; Newman v. Mayor of City of Newport, 73 R. I. 385) * * * the finding that to grant the application would result in a change in the character of the area was not only unreasonable but was unjustified.”
Where the use is lawful, it has been repeatedly held that the act of granting permission to lower curbs is purely ministerial. There is no exercise of judgment or discretion in the granting of such permission. (Matter of Smith v. Levy, 264 N. Y. 575; Matter of Monument Garage Corp. v. Levy, 266 N. Y. 339.)
The court, albeit reluctantly, is forced to conclude that posting the premises and thereby limiting occupancy, the changes of street parking regulations, coupled with the rejection of the application for a curb cut, illumine a pattern of discrimination which can only be characterized by the time-honored phrase “ arbitrary, unreasonable and capricious ”. It appears that the respondents have employed a “ buckshot ” approach to what is admittedly a difficult problem in the expectation that sufficient harassment would so impair petitioners’ conduct of their business as either to end or curtail profitable operation. Petitioners are thus torn between the Charybdis of tailored restricted parking and the Seylla of being denied the right to use their own and available property for such parking.
We are not much impressed by the argument that the bar’s patrons engage publicly in most noisome offenses. There are several provisions in the State’s Penal and Public Health Laws readily available to the local authorities in dealing with these situations. If the respondents, nevertheless, feel there is inadequate legislation, the remedy is by enacting appropriate local legislation or by overtures to the State Legislature. If the petitioners are violating the Alcoholic Beverage Control Law or any of the Rules or Regulations of the State Liquor Authority, their recourse — as other communities have found — again is quite obvious.
*399 We are not without compassion and sympathy for the residents of the area. But if solutions are to be had, they must be in accordance with the law of the land, i.e., consonant with the constitutional rights of the petitioners as well as other property owners. The legislative road to unconstitutional limbo — as to elsewhere — may be “paved with good intentions”. The motion is granted.